UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**PETER J VAN NICE** and
**MICHELLE A VAN NICE,**

Debtors.

Case No. **07-60080-13**

## *MEMORANDUM of DECISION*

At Butte in said District this 22nd day of October, 2007.

In this Chapter 13 bankruptcy, after due notice, a hearing was held October 2, 2007, in Butte on "Debtor's Amended Application for Professional Fees and Costs" filed by attorney R. Clifton Caughron ("Caughron") on August 28, 2007, together with the Trustee's objection thereto. Caughron appeared at the hearing in support of his Application and his paralegal, Carolyn Hamilton testified on Caughron's behalf. The Chapter 13 Trustee, Robert G. Drummond, appeared in opposition to Caughron's Application and Debtor Michelle Van Nice ("Michelle") testified in support of the Trustee's objection. In addition, the Trustee's Exhibits 1 through 3 were admitted into evidence.

Every now and then in the system of justice, the Court encounters a matter where the relationship between the debtors and their counsel has soured and the parties, to the Court's dismay, become contentious. Unfortunately, this is such a case.

BACKGROUND

Debtors filed a voluntary Chapter 13 bankruptcy petition on February 4, 2007. On

1

February 16, 2007, Debtors, through Caughron, filed a "Chapter 13 Plan dated February 16, 2007[,] including Notice and Motion(s) for Valuation; Motion(s) to Avoid Certain Liens; Assumption and Rejection of Executory Contracts; Notice of Opportunity for Hearing on Confirmation of the Plain Including All Matters as Set Forth in the Plan; and Notice". The day after filing the above pleading, Debtors, through Caughron, filed a Motion for Leave to File Alternate Form of Chapter 13 Plan. Following a hearing held March 6, 2007, the Court entered an Order on March 8, 2007, denying Debtors' request to file an alternate form of Chapter 13 Plan. The Court's Order of March 8, 2007, reads in part:

> Debtors' counsel also filed a "Memorandum Addressing Proposed Non-Standard Provisions of Plan and Response to Trustee's Objection to Debtor's [sic] Motion for Leave to File Alternate Form of Chapter 13 Plan" on March 5, 2007. Said Memorandum was not filed until 10:54 p.m., and thus neither the Court nor the Trustee had an opportunity to review Debtors' Memorandum prior to the 9:00 a.m. hearing on Debtors' Motion held March 6, 2007. Based upon the arguments presented by the parties in their pleadings filed prior to March 5, 2007, and based upon comments made by the Trustee and Debtors' counsel at the hearing, the undersigned entered an oral ruling from the bench on Debtors' Motion without granting either the Trustee or Debtors additional time to file post-hearing briefs. Thus, the Court did not consider Debtors' untimely filed Memorandum when it made the oral ruling on Debtors' Motion.
>
> The Trustee's arguments in opposition to Debtors' Motion are on point and persuasive. However, the Court would like to make a few additional observations. First, the Certificates of Service attached to Debtors' proposed plan and Debtors' Motion recite that: "[t]he undersigned certifies under penalty of perjury that she served a true and correct copy of the foregoing . . . addressed to the Mailing Matrix..." Although the certificates of service reflect that they were addressed to the Mailing Matrix, the Court presumes that Debtors' counsel meant to say that the particular documents were served upon the parties listed on the Mailing Matrix. Nevertheless, no mailing matrix is attached and the certificates of service fail to comply with Mont. LBR 9013-1(c)(2) in that neither certificate of service includes the name and address of each entity served.
>
> Moving beyond the fact that Debtors' proposed plan and Motion were served only on "the Mailing Matrix", as set forth in Mont. LBR 9004(b), this

2

Court has adopted a model form Chapter 13 plan, *see* Mont. LBF 19, that Chapter 13 debtors should use in most cases. However, as also provided in Mont. LBR 9004(b), upon a showing of good cause, Chapter 13 debtors can request leave to deviate from the model form. In this case, Debtors' seek to file an alternate form of Chapter 13 plan on the basis that the model form plan found at Mont. LBF 19 does not comport with the requirements of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 as amended by the Bankruptcy Abuse and Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23 (2005), and does not protect Debtors' legitimate interests.

As the Trustee correctly notes in his opposition to Debtors' Motion, Debtors fail to adequately explain how this Court's model form plan does not comply with BAPCPA. Moreover, Debtors wholly fail to explain how their proposed plan, as opposed to the model plan found at Mont. LBF 19, will better protect Debtors' legitimate interests. Debtors' counsel explained at the hearing that there was nothing special or unique about this particular case. According to Debtors' counsel, Debtors were desirous of filing the proposed plan that was before the Court rather than the model plan routinely used by this Court. Counsel also indicated that he filed the pending Motion in the instant case because the Debtors' had sufficient funds available to warrant taking a look at the issue. The Court would expect that counsel will use prudent billing judgment before attempting to bill these Debtors for fees for services associated with filing the instant Motion and for the preparation of the alternative plan, which is clearly not necessary and is unwarranted in this case. The Court would also expect that counsel would not charge any fees or costs to these Debtors for the time spent researching and writing the 21 page Memorandum that was filed late on the evening before the hearing, or for traveling from Helena to Butte for the hearing held on March 6, 2007.

As noted by the Court at the hearing, Debtors' proposed plan appears to be nothing more than a questionable attempt to push various matters, which should more appropriately be addressed through separate motions or pleadings, through Debtors' bankruptcy proceeding without affording affected parties due process of law.

Michelle also testified that Debtors wanted to resolve, on their own, an issue involving Helena Community Federal Credit Union's violation of the discharge injunction. However, Caughron advised Debtors that because Helena Community Federal Credit Union had violated the discharge injunction that pertained to a prior bankruptcy case filed by Michelle, that through

3

Caughron, Debtors stood to get $40,000.00 in damages. Thus, Caughron convinced Debtors to let Caughron pursue the matter and further convinced Debtors that the matter should be handled on a contingency fee basis.

As reflected on the docket, Caughron filed an "Objection to Proof of Claim; Motion for Sanctions for False Claim; for Violation of the Discharge Injunction; for Violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1973; for Punitive Damages; for Attorney's Fees and Costs; and Notice" on April 13, 2007. The Court responded to the Debtors' April 13, 2007, pleading with an Order entered April 16, 2007, which reads in relevant part:

> The foregoing pleading was docketed by Debtors' counsel as "Objection to Claim Number 2 by Claimant HELENA COMMUNICTY [sic] CREDIT UNION". Although the Objection to Claim portion of Debtors' pleading, which is identified in Debtors' docket entry, was filed in accordance with Mont. LBR 3007-2 and Mont. LBF 28, the Court finds that given the recent decisions by the Ninth Circuit Bankruptcy Appellate Panel in *In re Heath*, 331 B.R. 424 (9th Cir. BAP 2005), *In re Campbell*, 336 B.R. 430 (9th Cir. BAP 2005), and *In re Wylie*, 349 B.R. 204 (9th Cir. BAP 2006), it is appropriate to set all but the most routine objections to claims for hearing with at least 30 days notice to both the objecting party and the creditor.
>
> As for the remainder of Debtors' combined Objection and Motion, Debtors' counsel has been advised numerous times that although multiple requests for relief may be combined in a single pleading, each separate request for relief must be docketed separately. Counsel either does not understand the proper procedure for docketing such a pleading, or refuses to comply with this Court's docketing procedures.

The creditor subsequently withdrew Proof of Claim No. 2, thus rendering Debtors' Objection moot. Although the above matter was deemed fully resolved, Debtors filed a Motion for Approval of Settlement on July 5, 2007, which Motion was accompanied by a Release and Settlement Agreement between Debtors and Helena Community Federal Credit Union. Pursuant

to the Release and Settlement Agreement, Debtors agreed to accept the sum of $2,500.00 from Helena Community Federal Credit Union in full satisfaction of all Debtors' claims against Helena Community Federal Credit Union. According to paragraph 6 of the Motion, "[b]y agreement between Debt Relief Law, PLLC and Debtors, Debt Relief Law, PLLC shall retain 50% of the settlement proceeds stated above in full satisfaction of its fees and costs in this matter. No further application will be made for compensation of fees and costs related to this portion of the Debtors' case."

The Trustee opposed approval of Debtors' settlement with Helena Community Federal Credit Union and noticed the matter for hearing. The basis for the Trustee's objection was that: "The proposed settlement agreement recites 'No further application will be made for compensation of fees and costs related to this portion of the Debtors' case.' To the extent that this means that the Debtors' Attorney intends to take the fee without receiving approval of the Bankruptcy Court, after notice to all parties as required by F.R.B.P. 2002(a)(6), the application should be denied. Moreover, the fees contemplated by the settlement agreement are at odds with the disclosure that the Debtors' Attorney made pursuant to F.R.B.P. 2016(b). The Disclosure of Compensation of Attorney for the Debtors provides that the Debtors' Attorney has agreed to accept $1800.00 in total for fees related to this case." In response thereto, Caughron filed an Amended Disclosure of Compensation of Attorney for Debtors on August 8, 2007, and on August 14, 2007, the Court entered an Order granting Debtors' Motion for Approval of Settlement filed July 5, 2007, upon the "condition that attorney R. Clifton Caughron shall not receive any monies from Debtors' settlement with Helena Community Federal Credit Union until counsel files within ten (10) days of the date of this Order, and the Court approves, a proper

5

application for professional fees." Caughron's Amended Disclosure of Compensation of Attorney for Debtors reflects in paragraph 1 that Debtors "agreed to pay fees of $2,000.00 as an administrative expense of the Chapter 13 case" and further discloses that Debtors agreed to pay "a contingency fee equal to 50% of any actual recovery from any third party for a violation of the automatic stay, the co-debtor stay, the discharge injunction. . ." The Court is left to ponder whether Caughron had the slightest clue that his Amended Disclosure of Compensation filed August 8, 2007, was inconsistent with Debtors' Fifth Amended Chapter 13 Plan dated August 8, 2007. Ten days later, Caughron filed a Debtors' Application for Professional Fees and Costs, which Application was superseded on August 28, 2007, by the pending Amended Application for Professional Fees and Costs, wherein Caughron seeks an award of fees in the amount of $10,199.93 and costs in the amount of $712.39.

During the same period of time that the above events were unfolding, Debtors filed a Second Amended Chapter 13 Plan that was confirmed by Order entered April 19, 2007. However, upon request of the Trustee, the Court entered an Order on June 5, 2007, vacating the Order confirming Debtors' Second Amended Chapter 13 Plan. The Court's Order entered June 5, 2007, in addition to vacating the confirmation Order, directed Debtors to "file an amended Form B22C on or before June 15, 2007." Debtors did not file an amended Form 22C until July 3, 2007, prompting the Trustee to file a Motion to Dismiss on July 5, 2007. The Trustee withdrew his Motion to Dismiss on July 16, 2007.

Also in June of 2005, Debtors filed objections to the Proofs of Claim filed by Debtor Peter Van Nice's former spouse, Lynn Van Nice, and Peter's daughters, Kelsey Van Nice and Erin Lee Lanigan. Following a hearing held July 10, 2007, the Court entered a Memorandum of

6

Decision and Order on July 26, 2007, sustaining, in part, and overruling, in part, Debtors' objections to the Proofs of Claim filed by Lynn Van Nice, Kelsey Van Nice and Erin Lee Lanigan. Thereafter, Debtors filed a Fifth Amended Chapter 13 Plan on August 8, 2007, which Plan was confirmed by Order entered August 13, 2007. Debtors' Fifth Amended Plan estimated that Caughron's fees would be approximately $6,000.00.

Although no timely objections were filed in response to Caughron's pending request,[1] the Court, concerned about the dollar amount of Caughron's request, entered an Order on September 11, 2007, setting forth its concerns and noticing the matter for a hearing to be held October 2, 2007:

> [U]pon review of the billing statements filed with Caughron's Application and the case docket, the Court is concerned that the fees requested are excessive and unreasonable. The Court notes that the Debtors' Fifth Amended Plan filed on August 8, 2007, stated that Debtors' attorney fees were estimated to be approximately $6,000.00, yet only three weeks later Caughron filed an Application which exceeded the estimated amount by more than $4,000, and the Chapter 13 Trustee filed a consent to confirmation of Debtors' Fifth Amended Plan, so confirmation was no longer contested.
>
> The case docket shows that many of Caughron's services were unsuccessful. For example Debtors' motion for leave to file an alternative form of plan (Docket No. 10) was denied by Order entered on March 8, 2007 (Docket No. 20), in which this Court noted Caughron's statement in open court that he filed the motion because the Debtors had sufficient funds available to warrant taking a look at the issue. Caughron's later services in this case included filing several objections to claims which were withdrawn, along with a motion for sanctions and for violation of discharge injunction and the Montana Unfair Trade Practices and Consumer Protection Act of 1973, which was withdrawn. Caughron was ordered to appear and show cause why the Court should not revoke his ECF filing rights for failure to properly file pleadings and documents. The presumed reasonable fee in a Chapter 13 case is $1,750.00 under Mont. LBR 2016-1(b), less than one-fifth of Caughron's fee request.

---

[1] The Trustee's response to Caughron's fee request was not filed until September 27, 2007.

7

    It appears to the Court that a substantial reduction in Caughron's fee request is necessary and appropriate, since he failed to heed the Court's warning to exercise prudent billing judgment in this case and drastically exceeded his estimate of attorney's fees in the confirmed Plan. For purposes of due process, the Court will set Caughron's amended Application for hearing before entering a decision.

  At the October 2, 2007, hearing, Caughron explained that Debtors' original alternate form of Chapter 13 Plan was a plan that Caughron learned of at seminar he attended back East. Caughron stated that he deducted $2,600.00 from his total fees for the fiasco. Caughron, however, also explained that Debtors' Fifth Amended Plan was confirmed and that many issues in this case had been resolved successfully. Caughron also made the twisted argument that the fees of $6,000.00 as estimated in Debtors' Fifth Amended Plan did not include prior fees that were paid under Debtors' prior plans. Caughron should have stopped and thought about the above statement before he uttered it in open Court. Each of the six plans filed in this case stood or fell based upon the contents contained within each of the plans. For instance, each of the six plans filed in this case were 60-month plans. The Court is absolutely mystified that Caughron could even make the argument that he was disclosing fees of $1,150.00 in each of the plans filed on February 16, 2007, March 28, 2007, April 2, 2007, and April 19, 2007, that he was disclosing an additional fee of $6,000.00 in the July 3, 2007, plan and that he was disclosing another additional fee of $6,000.00 in the plan filed August 8, 2007, and that this Court should combine all such fees, which now, according to Caughron's position, total $16,600.00, to determine whether Debtors' Fifth Amended Chapter 13 Plan meets the requirements of confirmation.[2]

  Moving beyond Caughron nonsensical statement, Michelle and paralegal Carolyn

---

  [2] Taking Caughron's ridiculous utterance to its logical conclusion would mean that Debtors are now operating under a 360-month plan.

8

Hamilton agreed that most contact between Caughron's office and Debtors was done via email. Michelle also testified that Caughron was reluctant to file objections to the Proofs of Claim filed by Lynn Van Nice, Kelsey Van Nice and Erin Lee Lanigan and that the objections were filed only because of Debtors' insistence. The Court would note that Debtors' objections to Proofs of Claim Nos. 14, 15 and 30 reduced the priority portion of said claims by $19,263.10 and reduced the general unsecured portion by $1,000.00. The $19,263.10 reduction of Debtors' priority claims is certainly not insignificant.

Also troubling to the Court is Michelle's testimony that Caughron filed many pleadings, such as the pending fee request, without consulting with Debtors first. Such testimony is corroborated by Exhibit 1, an email from Michelle to the Trustee on July 6, 2007, wherein Michelle maintains that Caughron "has filed 95% of the documents without us ever looking at them or a last minute call to update us before he filed them." Similarly, Michelle testified that Caughron failed to contact or consult with Debtors' regarding the hearing on Debtors' objections to the Proofs of Claim filed by Lynn Van Nice, Kelsey Van Nice and Erin Lee Lanigan until 11:00 p.m. the night before the hearing.

## APPLICABLE LAW

Despite the lack of any timely objection to the aforementioned fee request, this Court has an independent obligation to review all fee applications to evaluate the propriety of the compensation requested. *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 841 (3rd Cir. 1994); *In re Wildman*, 72 B.R. 700, 701 (Bankr. N.D.Ill. 1987). In *Busy Beaver*, the court explained:

> [T]he integrity of the bankruptcy system ... is at stake in the issue of a bankruptcy judge's performance of the duty to review fee applications *sua sponte*. The public expects, and has a right to expect, that an order of a court is a judge's certification

9

> that the result is proper and justified under the law.... Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States trustee] or other interested parties.

*Id.* (*quoting In re Evans*, 153 B.R. 960, 968 (Bankr. E.D.Pa 1993)).

Extensive case law has developed regarding the amount and type of information that applicants must include in their applications. The case of *In re WRB-West Associates*, 9 Mont. B.R. 17, 18-20 (Bankr. Mont. 1990) summarizes thus:

> Pursuant to 11 U.S.C. §§ 327-330 and Bankruptcy Rules 2016 and 2017, this Court has an independent judicial responsibility to evaluate fees requested from the estate. *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 831 (Bankr. Vt. 1987); *In re Seneca Oil Co.*, 65 B.R. 902 (Bankr. W.D. Okla. 1986); *In re Frontier Airlines, Inc.*, 74 B.R. 973 (Bankr. Colo. 1987). The burden of proof to show entitlement to all fees requested from the estate is on the applicant. *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr. N.D. Ill. 1985). This burden is not to be taken lightly, especially given the fact that every dollar expended on fees results in a dollar less for distribution to creditors of the estate. *In re Yankton College*, 101 B.R. 151, 158 (Bankr. S.D. 1989); *In re Pettibone Corp.*, 74 B.R. 293, 305 (Bankr. N.D. Ill. 1987). All expenses and fees must be shown as both actual and necessary under § [330(a)(3)] of the Code. *S.T.N.*, 70 B.R. at 834; *Yankton College*, 101 B.R. at 158; *Seneca Oil*, 65 B.R. at 912. Moreover, *In re Convent Guardian Corp.*, 103 B.R. 937, 939-940 (Bankr. N.D. Ill. 1989) holds:
>
>> Bankruptcy Rule 2016 provides that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." (emphasis added) The Application should contain a detailed list of expenses including the date, the type and the amount. Expenses must be actual not estimates. *In re Wildman*, 72 B.R. 700-731 (Bankr. N.D. Ill. 1987); *In re Marsh*, 14 B.R. 615, 617 (Bankr. E.D. Va. 1981). An expense is necessary if it is incurred because it was reasonably needed to accomplish the proper representation of

the client. *Wildman*, 72 B.R. at 731.

The above excerpt demonstrates that this Court is obligated to review each request for fees and costs to insure that applicants provide:

1. a description of the services provided, setting forth, at a minimum, the parties involved and the nature and purpose of each task;
2. the date each service was provided;
3. the amount of time spent performing each task; and
4. the amount of fees requested for performing each task.

As explained by the Ninth Circuit Court of Appeals: "The detailed fee applications enable the bankruptcy court to fulfill its obligation to examine carefully the requested compensation in order to ensure that the claimed expenses are justified." *In re Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir. 1985).

Attached to the instant Application are billing statements that set forth the services provided to Debtors, along with the dates the services were provided, the amount of time spent on the services and the fee requested for such services. The Court thus has adequate information to enter a ruling on Caughron's Amended Application for Professional Fees and Costs.

## DISCUSSION

The Court would note that Caughron's instant request reflects total fees incurred in this case of $12,494.85 and costs of $712.39. Three items under the paralegal Carolyn Hamilton's time sheets for entries on 1/23/2007, 4/19/2007 and 4/19/2007 contain the notation "No Charge". Thus, the corresponding fees of $92.41 will not be considered. Also, the Court notes that paralegal Carolyn Hamilton has an entry on May 2, 2007, for drafting a motion for continuance and proposed order. There was no motion for continuance filed in the weeks prior to or after May 2, 2007. Thus, that entry, showing a fee of $16.50 appears to be bogus.

11

In addition, Caughron was previously instructed to exercise prudent billing judgment and not charge Debtors for the alternate form of Chapter 13 plan that Caughron tried to file in this case solely because these Debtors had money. In this Court's judgment, the following entries relate to the failed attempt to file a totally unnecessary alternate form of Chapter 13 plan, and are thus denied:

| Date | Description | Amount |
|---|---|---|
| 2/1/2007 | Drafted Chapter 13 Plan | 29.50 |
| 2/19/2007 | Copied and mailed plan and motion To leave to mailing matrix | 58.75 |
| 2/1/2007 | Clients to finalize Scheduled and Statements and draft of Plan prior to filing | 487.50 |
| 2/14/2007 | Drafting expanded Plan | 414.81 |
| 3/5/2007 | Drafting memorandum supporting alternative plan | 2061.75 |
| 3/8/2007 | Hearings on 3-6-07 | 146.25 |
| 2/19/2007 | Photocopies for 13 plan | 92.00 |
| 2/21/2007 | POSTAGE FOR PLAN | 26.10 |

Next is the matter pertaining to Helena Community Federal Credit Union. Because Caughron believed that he could extract damages of $40,000 from Helena Community Federal Credit Union, Caughron convinced Debtors that the matter should be handled on a contingency fee basis. The following entries clearly relate to such matter:

4/13/2007   Filed objection to proof of claims against
            Helena Community CU, US Bank, and Kelsey
            Van Nice with the Court; emailed proposed

12

|            |                                                                                                                                                                  |        |
|------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------|--------|
|            | orders to the Court[3]                                                                                                                                           | 30.28  |
| 4/19/2007  | Filed Withdrawal of Document, notice of amendment to schedules E and J, amended schedules E and J, and third amended plan with the court[4]                      | 45.93  |
| 4/13/2007  | Drafting Objection to Proof of Claim and Motion for Sanctions against Helena Community Credit Union                                                              | 780.00 |
| 4/20/2007  | Received response from Michelle agreeing to proceed with HCFCU matter                                                                                            | 65.00  |
| 5/1/2007   | Returned call to John Grant. He asked for an extension to reply to our offer. Granted same to end of week.                                                       | 37.50  |
| 6/12/2007  | Drafting settlement agreement in HCFCU matter                                                                                                                    | 225.00 |
| 7/5/2007   | Call from Cheryl Guthrie at Cuna Mutual. Drafting settlement release to forward to her, with copies to Grant and Trustee. Drafting Motion to approve settlement agreement | 891.81 |
| 8/8/2007   | Preparations for hearing                                                                                                                                         | 94.13  |
| 8/8/2007   | Drafted and filed Amended Disclosure statement[5]                                                                                                                | 75.00  |

---

[3] The foregoing entry suffers from a defect known as lumping. Because the Court cannot separate the Helena Community Federal Credit Union matter from the other listed items, the Court finds it appropriate to attribute the entire entry to the Helena Community Federal Credit Union matter.

[4] This entry is lumped and is denied for the reason discussed in footnote 2.

[5] Caughron drafted the Amended Disclosure of Compensation of Attorney for Debtors to reflect the contingency fee agreement for the Helena Community Federal Credit Union matter that was not previously disclosed.

| 8/11/2007 | Calls to Trustee and client. He filed consent To Plan, and will consent to the settlement. Advised clients that they need not attend tomorrow | 75.00 |
| --- | --- | --- |
| 8/14/2007 | Pro rated travel to Court | 112.50 |
| 8/14/2007 | Court appearance - Settlement approved; Court ordered us to file fee application in 10 days | 112.50 |
| 8/24/2007 | Arranging for execution of HCFCU settlement document | 75.00 |
| 8/24/2007 | Call to John Grant re finalizing HCFCU settlement, executing release and payment of settlement amount | 75.00 |
| 8/14/2007 | Pro rated Mileage to/from hearing | 13.35 |

The aforementioned fees of $2,694.65 and costs of $13.35, which together total $2,708.00 are covered by a contingency fee agreement that provides for fees of $1,250.00. Based upon the record, the Court will award Caughron a fee of $1,250.00 for the fees and costs associated with negotiating and settling the matter with Helena Community Federal Credit Union.

Considering only the items discussed to this point, the Court finds that the total fees and costs that could conceivably be allowed in this case, including the contingency fee award of $1,250.00, is only $8,323.67. Nevertheless, once the entries associated with negotiating and settling the Helena Community Federal Credit Union matter are removed from the billing entries, the sole remaining service that is charged after August 8, 2007, the date Debtors' Fifth Amended Chapter 13 Plan was filed, is the charge of $487.50 relating to reviewing and editing the instant fee application. In a case not unlike the instant case, this Court wrote:

Applicant filed a Third Amended Chapter 13 plan dated July 27, 1998, which

14

contained the following provision:

> In advance of all other claims, the Trustee shall pay those claims, fees, or charges specified in 11 U.S.C. § 507(a)(1), including the Debtors' attorney fees of $1,000.00 less $575.00 received from the Debtors prior to the filing, plus costs and additional fees in such amount as may be allowed by the Court... .

That plan was confirmed by the Court on August 21, 1998.

> The Court takes such a provision to mean that as of July 27, 1998, Applicant had provided services to Debtors in the approximate sum of $1,000.00. While Applicant did not sign the Third Amended Chapter 13 plan, he certainly cannot deny that he prepared it or that he filed it with the Court.[6] As Applicant is well aware, both the Court and the Trustee would assume that the fees incurred as of the date of the plan were in the neighborhood of $1,000.00 and would use such figure as a basis for calculating the feasibility of Debtors' plan. Knowing the importance of this figure, Applicant nevertheless proceeded to mislead the Court and the Trustee by failing to include the actual fees incurred as of July 23, 1998, in the sum of $4,033.50. Furthermore, as of the date of the Third Amended Chapter 13 plan, Applicant had incurred costs of $300.92. In all, Caughron included less than a quarter of the total fees and costs that had been incurred at the time the Third Amended Chapter 13 plan was filed.
>
> Such a gross understatement of fees can have a drastic impact on the confirmation of debtors' plans, and this Court will not tolerate this type of misrepresentation.

*In re Townsend*, 17 Mont. B.R. 141, 143-44 (Bankr. D. Mont. 1998).

---

[6] Material misrepresentations with regard to any provision in a Chapter 13 plan could subject either the attorney or the proponent of the plan to sanctions under Bankruptcy Rule 9011 which reads:

> By representing to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery

As noted above, Caughron had incurred all but $487.50 of the total fees on or before the date Debtors' Fifth Amended Chapter 13 Plan was filed on August 8, 2007. Caughron's failure to disclose – to this Court, the Chapter 13 Trustee and other parties-in-interest – that the fees exceeded the amount disclosed in the record was a material misrepresentation that, as noted by this Court in *Townsend*, will not be tolerated.

Additionally, 11 U.S.C. § 329 provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to –

(1) the estate, if the property transferred-

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

Section 329 is implemented by F.R.B.P. 2016. Rule 2016(b) provides, in pertinent part, the following:

(b) *Disclosure of Compensation Paid or Promised to Attorney for Debtor.* Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity.... A supplemental statement shall be filed and

16

transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

Based upon the foregoing code section and rule, Caughron had a duty to disclose his compensation arrangement with Debtors. Caughron did disclose such arrangement, but in the Amended Disclosure filed August 8, 2007, represents that the agreed fee was $2,000.00. The Court would agree that the fee of $2,000.00 does not include the contingency fee agreement and arguably does not include a fee of $400.00, which amount could be charged under "Non-Base Attorney Fees" for Debtors' apparent baseless opposition to a motion to modify stay filed by First Interstate Bank. Such fees of $3,650.00 are a far cry below the $10,199.93 in requested fees or the $6,000.00 fees disclosed in Debtors' Fifth Amended Plan. Consequently, Caughron's instant fee request is clearly in violation of § 329 and F.R.B.P. 2016(b). *See In re Lewis*, 113 F.3d 1040, 1044-45 (9th Cir. 1997).

The Ninth Circuit panel in *In re Park-Helena Corp.*, 63 F.3d 887, 880-81 (9th Cir. 1995), concluded:

> To facilitate the court's policing responsibilities, the Bankruptcy Code and Federal Rules of Bankruptcy Procedure impose several disclosure requirements on attorneys who seek to represent a debtor and who seek to recover fees. *See* 11 U.S.C. § 329; Fed.R.Bankr.P. 2014 & 2016. The disclosure rules impose upon attorneys an independent responsibility. Thus, failure to comply with the disclosure rules is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule. *In re Film Ventures Int'l*, 75 B.R. at 252.

\* \* \*

> A fee applicant must disclose "the precise nature of the fee arrangement," and not simply identify the ultimate owner of the funds. *See In re Glenn Elec. Sales Corp.*, 99 B.R. 596, 600 (D.N.J.1988); *see also In re Bob's Supermarket's, Inc.*, 146 B.R. 20, 25 (Bankr.D.Mont.1992) ( " '[D]ebtor's counsel [must] lay bare all its dealings ... regarding compensation.... Counsel's fee revelations must be

17

direct and comprehensive. Coy, or incomplete disclosures ... are not sufficient.' ") (quoting *In re Saturley,* 131 B.R. 509, 516-17 (Bankr.D.Me.1991)), *aff'd in part and rev'd in part,* 165 B.R. 339 (9th Cir. BAP 1993); *In re Plaza Hotel Corp.,* 111 B.R. 882, 883 (Bankr.E.D.Cal.) ("the duty is one of complete disclosure of *all facts*") (emphasis added), *aff'd,* 123 B.R. 466 (9th Cir. BAP 1990); *In re B.E.S. Concrete Prods., Inc.,* 93 B.R. 228, 237 (Bankr.E.D.Cal.1988) ("The burden is on the person to be employed to come forward and make *full, candid, and complete disclosure.*") (emphasis added).

The disclosure rules are applied literally, even if the results are sometimes harsh. *See In re Plaza Hotel,* 111 B.R. at 883. Negligent or inadvertent omissions "do not vitiate the failure to disclose." *In re Maui 14K, Ltd.,* 133 B.R. 657, 660 (Bankr.D.Haw.1991); *In re Coastal Equities, Inc.,* 39 B.R. 304, 308 (Bankr.S.D.Cal.1984). Similarly, a disclosure violation may result in sanctions "regardless of actual harm to the estate." *In re Maui 14K,* 133 B.R. at 660.

The Court is given the inherent authority over Debtors' attorney's compensation to approve or deny fees and costs, in whole or in part, if a violation of disclosure occurs. *See In re Lewis,* 113 F.3d at 1045; and *In re Buckner* 350 B.R. 874, 878 (Bankr. D. Idaho 2005). The panel in *Lewis* stated:

> Although we did not explicitly so recognize in *In re Park-Helena,* the bankruptcy court's authority to deny completely these attorney's fees was grounded in the inherent authority over the debtor's attorney's compensation. The Bankruptcy Code contains a number of provisions (e.g., §§ 327, 329, 330, 331) designed to protect the debtor from the debtor's attorney. *See, e.g., In re Walters,* 868 F.2d 665, 668 (4th Cir.1989) (noting that § 329 and Rule 2017 are designed to protect the creditors and the debtor against overreaching by attorney). As a result, several courts have recognized that the bankruptcy court has broad and inherent authority to deny any and all compensation when an attorney fails to meet the requirements of these provisions. *See, e.g., In re Downs,* 103 F.3d 472, 479 (6th Cir.1996) ("[T]he bankruptcy court should deny all compensation to an attorney who exhibits a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement under § 329 and Rule 2016. The authority to do so is inherent, and in the face of such infractions should be wielded forcefully."); *Matter of Prudhomme,* 43 F.3d 1000, 1003 (5th Cir.1995) ("Additionally, the court's broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings empowers the bankruptcy court to order disgorgement as a sanction to debtors' counsel for nondisclosure."); *In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569, 575 (Bankr.N.D.Tex.1986) ("Indeed, a

failure of counsel to obey the mandate of § 329 and Rule 2016 concerning disclosure, and by implication review by the Court, is a basis for entry of an order denying compensation and requiring the return of sums already paid.").

The Court concludes that Caughron violated the duty to disclose by failing to inform the Court and the trustee with an accurate estimate of fees in his Amended Disclosure of Compensation of Attorney filed August 8, 2007. Even though the Court concludes, based upon Caughron's violation of disclosure, that it could disallow all fees in this case through its inherent authority, the Court exercises its discretion and allows a total fee award of $3,650.00, which amount consists of the $2,000.00 base fee set forth in the Amended Disclosure of Compensation of Attorney, $400.00 for responding to First Interstate Bank's Motion to Modify Stay, and $1,250.00 for negotiating and settling the Helena Community Federal Credit Union matter. In addition, even though the Court could deny costs of $131.45 associated with filing Debtors' first plan and the costs associated with the Helena Community Federal Credit Union settlement, the Court will award Caughron all requested costs of $712.39. Thus the total fee and cost award is $4,362.39. Such amount adequately compensates Caughron for the services that were performed in this case.

According to Caughron's Amended Application, he has already received $1,800.00 from Debtors, has received the contingency fee award of $1,250.00 and has received $1,150.00 from the Trustee. Thus, all that is left to be paid to Caughron is the sum of $162.39

In accordance with the foregoing I will enter a separate order providing as follows:

IT IS ORDERED that Debtor's Amended Application for Professional Fees and Costs filed by attorney R. Clifton Caughron on August 28, 2007, is granted in part, and denied in part; and R. Clifton Caughron is awarded reasonable professional fees and costs in the total sum of

$4,362.39 with $162.39 ($4,362.39 less $1,800.00 received at or near commencement of this case, and less $1,250.00 received from Helena Community Federal Credit Union and less $1,150.00 already received from the Chapter 13 Trustee) treated as a remaining administrative expense of the Chapter 13 bankruptcy estate.

                    BY THE COURT

                    HON. JOHN L. PETERSON
                    Bankruptcy Judge
                    United States Bankruptcy Court
                    District of Montana